UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JACOB SMITH, | Case No.: 3:20-cv-00299-MMD -CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 34 |
| CHARLES DANIELS, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 34, 34-1 to 34-7, 36 (errata).) Plaintiff filed a response. (ECF No. 37.) Defendants filed a reply. (ECF No. 38.)

After a thorough review, it is recommended that Defendants' motion be denied.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Warm Springs Correctional Center (WSCC). (*Id.*)

The court screened Plaintiff's complaint and allowed him to proceed with a single Fourteenth Amendment equal protection claim against defendants Mondragon, Craig, Henley[1],

---
[1] Mistakenly named by Plaintiff as Hensley.

and John Doe 1 (once identified)[2]. (ECF No. 3.) Plaintiff alleges that on August 6, 2019, Craig asked Plaintiff, who is Native American, whether he would move to Unit 1 to live with three other Native American inmates. Craig said they had previously moved a Puerto Rican inmate in with the Native American inmates, and it caused problems. Plaintiff said he did not want to move to Unit 1 because it was overcrowded and unsanitary, and he did not get along with the other Native Americans. The next day, Mondragon informed Plaintiff he would be moved to Unit 1. Plaintiff told Mondragon that he had already refused this move, and Mondragon contacted Craig, Henley and John Doe 1. Plaintiff claims that they sought to move him solely because he is Native American.

Defendants move for summary judgment, arguing: (1) Defendants did not personally participate because there is no evidence they deprived Plaintiff of his constitutional rights; (2) Plaintiff's rights were not violated because there is no evidence Plaintiff was asked to move based on his religious beliefs or nationality; and (3) Defendants are entitled to qualified immunity because no one in Defendants' position would be on clear notice that their actions violated the Equal Protection Clause.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

---

[2] Plaintiff has not timely identified John Doe 1; therefore, he should be dismissed without prejudice under Federal Rule of Civil Procedure 4(m).

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

On August 6, 2019, Plaintiff was housed in Unit 4-A-30-A. (ECF No. 34-1 at 6.) On August 7, 2019, he was placed in Unit 4-B-12-A. (*Id.*) Since his incarceration at WSCC, he has never been placed in Unit 1. (*Id.* at 5-6.) On August 7, 2019, at 8:30 a.m., it was reported that Plaintiff refused a bed move. (ECF No. 34-2.) Plaintiff was restrained and moved to Unit 4B, cell

12a, under red tag status. (*Id*.) Plaintiff was served with the notice of charges of an MJ 57 for failure/refusal to cell as assigned. (ECF No. 34-3.)

In his report for the notice of charges, Mondragon said he was assigned to Unit 4A and on August 7, 2019, at approximately 8:00, he advised Plaintiff that he had a bed move from 4A30 to 1A5C. Plaintiff said he could not move there because that cell housed Natives, and he did not get along with the Natives even though he is a Native "and a lifer because he will not politic [sic]." Plaintiff said he would rather get red-tagged. Mondragon spoke to caseworker Henley, and Henley said there was nothing in the record stating Plaintiff could not move. Then Craig came to unit 4A and escorted Plaintiff to Unit 4B in restraints with no problems. (*Id*.)

A preliminary hearing was held on the notice of charges on August 13, 2019. Plaintiff plead not guilty, and said he would explain to the caseworker why he would not move with other Native Americans. (ECF No. 34-4.)

On September 4, 2019, a disciplinary hearing was conducted and Plaintiff was found guilty of the charges and lost canteen privileges for 30 days. (ECF No. 34-5.) At the hearing, Plaintiff said he was "good to house with any group. The issue is not all groups are good with me housing with them. I am serving a life sentence and should not be moved into a four man cell." (*Id*.)

Plaintiff filed a grievance (number 20063089279) asking for his charges to be reversed as unconstitutional because he was being moved to a four-man cell with all Native Americans, and he claimed he was being racially segregated. He said he was not part of the tribe, and that could cause him problems. He also complained that the housing in Unit 1 is illegal because of overcrowding. In response, Plaintiff was told that NDOC does not house based on color of skin or gang affiliation, and Plaintiff did refuse to cell. (ECF No. 34-6.)

Defendants argue there is no evidence of a constitutional violation. First, they point out that inmates do not have a say in where they are housed. Second, they maintain it was Plaintiff who was actually trying to racially segregate himself from the other Native American inmates. In addition, Plaintiff was never actually moved to Unit 1. They contend there is no evidence Plaintiff's bed move was because he is Native American. Instead, they assert Plaintiff did not want to be housed with three other inmates in a cell.

Plaintiff maintains that Craig asked if he would move to Unit 1 to be housed with three other Native Americans, and Plaintiff told Craig no, he did not want to move to Unit 1 and be put in a cell with only Native Americans. He also commented that the living conditions in Unit 1 were unsanitary and overcrowded. Then, Mondragon told him he was being moved to Unit 1, and Plaintiff told Mondragon he did not want to move to Unit 1 because he was Native American, and because of the unsanitary and overcrowded living conditions. Mondragon contacted Henley, and they told Plaintiff he would be written up if he did not move. Plaintiff claims he told Mondragon that he should not be forced to move just because he is Native American. He also told Mondragon he is not a member of the tribe, and that could cause problems.

Preliminarily, both parties reference Plaintiff's allegations that the housing conditions in Unit 1 were unsanitary and overcrowded. However, Plaintiff's equal protection claim is not based on these allegations, but on the allegation that Plaintiff was asked to move to Unit 1 solely because he is Native American.

The Supreme Court has held that classification based on race is "immediately suspect," and subject to strict scrutiny. *Johnson v. California*, 543 U.S. 499, 509, 515 (2005). "In the prison context, when the government's power is at its apex, we think that searching judicial

review of racial classifications is necessary to guard against invidious discrimination." *Id*. at 511. Race-based classification must further a compelling government interest and do so by the least restrictive means. *Id*. at 505, 514.

Defendants contend there was no race-based classification at play here. Instead, they claim Plaintiff was told to move cells, but Plaintiff refused and it was Plaintiff who said he did not want to be housed with three other Native Americans, that he should not be housed in a four-man cell when he has a life sentence, and that Unit 1 was unsanitary and overcrowded. Therefore, they maintain it was Plaintiff who was trying to racially segregate himself, and not Defendants.

Plaintiff, on the other hand, maintains that the whole reason the move was requested was because Defendants wanted Plaintiff to house with three other Native American inmates, whom they had issues housing previously with an inmate of another race. While Plaintiff does not include a declaration or affidavit with his response, these statements are virtually identical to the allegations he makes in his verified complaint. The Ninth Circuit has held that a verified complaint may serve as an affidavit for purposes of summary judgment if it is based on personal knowledge and sets forth the requisite facts with specificity. *Moran v. Selig*, 447 F.3d 748, 760 n. 16 (9th Cir. 2006) (citing *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc)). Plaintiff's verified complaint meets these requirements because it is made based on his personal knowledge of what Defendants told him, and is sufficiently specific.

Considering the evidence presented by both sides, the court finds there is a genuine dispute of material fact as to whether or not Defendants' employed a race-based classification in requesting Plaintiff move to another unit in August of 2019.

Defendants also argue that Plaintiff's claim is moot because he was never actually moved to Unit 1. However, it is the race-based classification itself that is subject to strict scrutiny if there was in fact such a classification in place.

Finally, Defendants argue they are entitled to qualified immunity because under the facts and circumstances of this case it was not clearly established that any action or policy choice was unconstitutional.

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

Viewing the facts in the light most favorable to Plaintiff, a fact finder could believe that Defendants attempted to classify Plaintiff based on his race. At this point, Defendants have not asserted that his classification advanced a compelling government interest by the least restrictive means. Moreover, it was clearly established that race-based classifications violate the constitution if not supported by a demonstrated compelling government interest that is implemented by the least restrictive means. Therefore, Defendants are not entitled to qualified immunity.

For these reasons, Defendants' motion for summary judgment should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Defendants' motion for summary judgment (ECF No. 34).

IT IS HEREBY FURTHER RECOMMENDED that John Doe 1 be **DISMISSED WITHOUT PREJUDICE**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: August 18, 2022

Craig S. Denney
United States Magistrate Judge